UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                                     )
**ROBERT J. MILNE,**                       ) CIVIL ACTION NO: 302CV660 CFD
                                 **Plaintiff,**       )
                                                     )
**vs.**                                                )
                                                     )
**CATUOGNO COURT REPORTING**    )
**SERVICES, INC., STEN-TEL, INC.,**    )
**AND RAYMOND F. CATUOGNO,**    )  **MARCH 4, 2005**
                              **Defendants.**        )
_____  )


## JOINT TRIAL MEMORANDUM

**1.    Trial Counsel**

        Trial counsel for plaintiff – Patrick Tomasiewicz, Esq., Fazzano, Tomasiewicz

Paulding & Barall, 836 Farmington Avenue, Suite 109, West Hartford, CT, 06119, Tel:

860/231-7766.

        Trial counsel for defendant – L. Jeffrey Meehan, Esq., Doherty, Wallace,

Pillsbury and Murphy, PC, One Monarch Place, Springfield, MA, 01144, Tel: 413/733-

3111; Michael J. Bonanno, Doherty, Wallace, Pillsbury and Murphy, PC, One Monarch

Place, Springfield, MA 01144, Tel: 413/733-3111.

**2.     Jurisdiction**

The plaintiff claims jurisdiction in this court pursuant to 28 U.S.C. § 1332 and Conn. Gen. Stat. §52-59(b) (the long arm statute).   The defendants contested the assertion of jurisdiction.   Judge Gerard Goetell of this Court allowed the motion to dismiss for lack of personal jurisdiction with respect to Sten-Tel, Inc. ("Sten-Tel") and Raymond F. Catuogno.   However, he denied as to the defendant, Catuogno Court Reporting Services, Inc. ("CCRS").   As the remaining defendant, CCRS continues to dispute the conclusion that it is subject to the jurisdiction of this Court.

**3.     Jury/Non-jury**

The claim for jury trial has been asserted by all parties.

**4.     Nature of Case**

Plaintiff's Position

a)    Nonpayment for services rendered by the plaintiff;
b)    Breach of promise;
c)    Negligent infliction of emotional distress;
d)    Fraud;
e)    Negligent misrepresentation.

Relief requested:  $125,000.00 together with interest, costs of suit, punitive damages and such other relief as this Court deems equitable and just.

<u>Defendant's Position</u>

This is a dispute between the former accountant of the defendant business entity regarding what compensation is due the accountant, if any, as result of that relationship and the termination thereof.

**5.     Stipulations of Fact and Law**

It is stipulated that CCRS, through its principal, Raymond F. Catuogno, formally terminated the relationship between CCRS and the plaintiff, Robert J. Milne, on November 17, 2001.

**6.     Plaintiff's Contentions**

This matter involves a claim of breach of contract and negligent infliction of emotional distress brought by the plaintiff against the defendant.  The plaintiff is a licensed C.P.A. in the States of Connecticut and Massachusetts, and seeks monetary damages in excess of $75,000.00, partially for services rendered and also as a result of a breach of an oral agreement between the plaintiff and defendant for compensation

referred to as an "end of service fee."  Accordingly, the plaintiff is seeking to collect

upon an invoice for services rendered in calendar year 2001 as a certified public

accountant in the amount of $30,012.  The plaintiff seeks statutory interest, as well,

pursuant to C.G.S. §37-3.  Additionally, the plaintiff seeks to enforce a verbal

agreement for an "end of service fee" in the amount of $40,000.


7.      **Defendant's Contentions**

CCRS contends that during the calendar years 2000 and 2001 the plaintiff

consistently overbilled CCRS for accounting services; that the plaintiff overstated the

hours which he spent working on the business of CCRS and that the plaintiff failed to

abide by a specific admonition from the principal of CCRS that he limit his hours to 20

hours per month.  In the course of the dispute concerning what the defendant perceived

as excessive billings, the plaintiff suggested to Raymond F. Catuogno, the principal of

CCRS, that the two decide the matter by means of physical combat.

During the fall of 2000 the principals of CCRS and a related business, Sten-Tel,

were exploring the possibility of a sale to a third party of both businesses.  The plaintiff

was made aware of the impending sale and was requested to provide financial

documentation.  On the eve of the proposed sale, the plaintiff refused to provide the

financial documentation unless he received a "look back fee" or contingent fee. That sale did not come to fruition.

During the ensuing year, the bills for professional services rendered by the plaintiff to CCRS again became excessive. Moreover, a tracking of the time actually spent by the plaintiff on the work of CCRS revealed that he was overstating the number of hours which he allegedly devoted to the business of CCRS. Moreover, he began to perform functions for CCRS in the absence of a request and in duplication of the efforts of CCRS' staff. He was specifically asked not to perform any work during the month of August, 2001 and yet billed an excessive amount of hours to CCRS nonetheless.

In November of 2001, again CCRS and its related company, Sten-Tel, were in the process of negotiating a sale of both businesses to a third party. The plaintiff was to provide certain financial documents to facilitate the sale on or about November 16, 2001. Milne refused to provide the documents unless CCRS paid him a $50,000 bonus. On the advice of counsel, on November 17, 2001 CCRS formally terminated its relationship with the plaintiff. This second sale did not come to fruition.

In summary, CCRS contends that the plaintiff overcharged it for professional services over a period of 24 months and did not abide by continuing admonitions to limit the hours spent on CCRS' business; that the plaintiff in violation of the ethical

codes pertaining to the profession of accounting attempted to force CCRS to pay him a contingent fee in the absence of any agreement to do so on the eve of prospective sales of the businesses to two separate entities; and that the plaintiff, again in violation of the ethical rules pertaining to the profession of accounting, wrongfully withheld financial data from CCRS as leverage to obtain a "look back fee" or a contingent fee on the sale of the businesses.  Because of the overcharging for accounting services, CCRS contends that it is entitled to a set off in the sum of $28,000 and that the plaintiff is not entitled to a "look back fee" or contingent fee because it was never agreed to; it was  violative of the ethical standards applicable to certified professional accountants and that the underlying basis, that is the sale of the businesses, never transpired.

**8.    Legal Issues**

    a.    Whether or not the plaintiff is entitled to compensation in the amount of $30,012.00 for services rendered as a certified public accountant to the defendant, Catuogno Court Reporting Services, Inc.;

    b.    Whether the plaintiff is entitled to statutory interest on said bill from the time frame of January 1, 2002, to the present;

    c.    Whether or not the plaintiff and defendant entered into a verbal agreement for an "end of service fee" in the amount of $40,000.00 on or about November 16, 2001.

    d.      Whether the plaintiff's claims are barred in whole or in part by the statute of frauds.

    e.      Whether a violation of the ethical standards for the practice of certified public accounting bars the plaintiff for recovery with respect to some or all of his claims.

**9.**      **Voir Dire Questions**

    a.      <u>Plaintiff</u>

        1.      Do you have any difficulty in awarding a person money damages for the payment of a bill?

        2.      Do you believe that people can make verbal agreements or promises to each other?

        3.      What are your thoughts about awarding a person monetary damages if after hearing all of the evidence in the case you believe that a promise by the defendant to pay money to the plaintiff was broken?

        4.      Do you have any difficulty in awarding monetary damages to a party for a breach of a verbal agreement?

        5.      Do you believe that a verbal agreement can be as binding as a written agreement?

        6.      Would you be willing to enforce a verbal agreement if you believe that one was made between the plaintiff and defendant?

        7.      What are your thoughts about awarding monetary damages for emotional upset or distress if you found that the distress was caused by the defendant's behavior?

8.     Do you have any opposition or feelings against awarding monetary damages for emotional distress, rather than awarding damages for a physical injury?

9.     Has anyone ever called you a thief or a liar?

10.    Has any one of you ever been the victim of a broken promise that involved money to be paid to you?

11.    Has any one of you not been paid after performing services for another individual?

12.    Do you have anything against the court system or lawyers that would affect your ability to be a fair juror?

13.    Have you ever had a bad experience with an accountant?

14.    If a bill is not paid on time, would you have any difficulty awarding interest on the money if the court instructs you to do so?

15.    Have you ever been a party to a lawsuit?

16.    Does anyone have any familiarity with the plaintiff or the defendant?

17.    Will you follow all instructions given to you by the Court in this case, even if you believe that the law should be different?

18.    Are you willing to assess the credibility of the parties in your role as a juror?

b.    <u>Defendant</u>

The defendant does not request this Court to propound any particular

voir dire questions to the prospective jurors apart from those which are customarily

presented by the court.

**10.    List of Witnesses**

a.    <u>Plaintiff</u>

Robert Milne
3 Osage Road
West Hartford, CT  06117

Mr. Milne is expected to testify as to his bill for services rendered during
calendar year 2001 and the discussion that occurred between Mr. Catougno and himself
regarding the end of service fee in the amount of $40,000. Mr. Milne will testify that he
served as an accountant for the defendant, Mr. Catougno personally, and other members
of his family for many years. Also, Mr. Milne will testify that Mr. Catougno appointed
him a trustee on a family trust and included him in a number of business affairs of the
defendant and his related entity Sten-Tel, Inc. Mr. Milne will testify as to origin of the
"end of service" fee agreement made between the parties and the abusive manner in
which Mr. Catougno treated the Plaintiff precipitating the filing of a claim for emotional
distress. The plaintiff shall testify as to the emotional upset that he suffered due to the
manner in which he was treated by the defendant.  The plaintiff shall also testify as to
bills that he submitted in previous years to the defendant that were paid on a timely
basis.  The plaintiff will testify as to financial pressures faced by Mr. Catougno that
according to the plaintiff caused him to renege on the "end of service" fee agreement,
and the payment of his bill for services rendered.  The plaintiff will testify to the
attorney's fee that he has incurred in this matter as well other fees and cost of the
litigation.

b.      Defendant

Raymond F. Catuogno
1414 Main Street
Springfield, MA 01144

Mr. Catuogno is expected to testify regarding his lengthy relationship with the plaintiff, Robert Milne, their discussions regarding the provision of professional accounting services by Milne to businesses of which Catuogno was a principal; to an overcharging of CCRS by Milne for accounting services; and the submission of bills for professional services which misstated the number of hours actually spent by the plaintiff in the provision of services to CCRS.  Mr. Catuogno is also expected to testify regarding his conversations with the plaintiff wherein the plaintiff asserted a claim for a "look back fee", or contingent fee, because of the impending sale of CCRS and a related business as well as a refusal to provide the financial documentation necessary for the consummation of the transactions.

George Catuogno
1414 Main Street
Springfield, MA 01144

If called, George Catuogno is expected to testify regarding his observations of Mr. Milne on the premises of CCRS and a related business, Sten-Tel, during the years 2000 and 2001.  As one of the principals of Sten-Tel, Mr. Catuogno is expected to testify regarding the complete absence of any arrangement wherein Mr. Milne was to be paid a "look back fee" or other contingent fee based upon the sale of Sten-Tel.

Christine Cyboron
1414 Main Street
Springfield, MA 01144

If called, Ms. Cyboron, the bookkeeper of CCRS and Sten-Tel, is expected to testify that Robert Milne, until his termination in November of 2001, prepared profit and loss statements, balance sheets, accounts aging and all financial reports for CCRS and a related business Sten-Tel. She will testify to a record kept by her of time spent by Milne working on the business of CCRS and Sten-Tel and a comparison between the bills submitted by the plaintiff for accounting services and the actual hours spent providing such services to CCRS and Sten-Tel. She will testify that Mr. Milne would appear uninvited and perform functions at CCRS which he was not requested to perform and which was within her province as the bookkeeper.

John Potter, Jr.
84 Hillman Street
Springfield, MA 01103

If called, Mr. Potter is expected to testify regarding his introduction of the plaintiff to Raymond F. Catuogno on or about 1984 and several years later of Milne's decision to close his office in Springfield, Massachusetts and instead to offer accounting services to clients to be performed at the client's premises. Mr. Potter is expected to testify that Milne said that he would not charge a client for the time spent commuting from his home to the client's place of business pursuant to his new plan to provide services at the client's location as opposed to his accounting office.

Christopher Aquadro
355 Bridge Street
Northampton, MA 01060

If called, Mr. Aquadro is expected to testify that he has retained the plaintiff as his accountant for many years and that he never heard of a 'look back fee" or contingency fee to be paid by a client of the plaintiff if the client elected to sell his business.

## <u>EXPERT WITNESSES</u>

On May 19, 2004, prior to the deadline of May 21, 2004, pursuant to the plaintiff's final motion for enlargement of time to complete discovery, the defendant provided plaintiff's counsel with a report from the defendant's expert witness, Kevin E. Hines, CPA of Myers Brothers, Klicka, P.C., Certified Public Accountants, 167 Dwight Road, Suite 300, Longmeadow, Massachusetts. If called, Mr. Hines is expected to opine that the number of hours billed by the plaintiff in his capacity as a professional accountant to CCRS and a related company, Sten-Tel, during the calendar years 2000 and 2001 was excessive. In Mr. Hines' opinion, the servicing of CCRS and the related entity required approximately 165 to 195 hours per year for monthly and year end closing of books; preparation of tax returns; and management advisory services. Mr. Milne billed the entities approximately 380 hours in calendar year 2000 and about 336 hours in calendar year 2001 which year was abbreviated because of a termination of his services. In other words, the plaintiff overcharged CCRS and Sten-Tel for approximately 150 hours of professional services in each calendar year.

Mr. Hines is expected to testify that the regulations in both Connecticut and Massachusetts for the professional conduct of certified public accountants, require the maintenance of high standards of personal conduct in all matters effecting one's fitness to practice public accountancy….. and, accordingly, a duty to abide by the rules of conduct relating to the profession of accountancy. The plaintiff's insistence on a 'look back fee", contingent fee, bonus or later what the plaintiff referred to as a 'end of service fee" is violative of the Regulations for the Conduct of Profession of Accounting both in Massachusetts and Connecticut absence certain circumstances such as a contest

with the government pertaining to the obligation to pay taxes which has no applicability to the instant matter.  Finally, Mr. Hines is expected to testify that under both the regulations of Massachusetts and Connecticut, an accountant has an absolute obligation to furnish a client with a copy of the accountant's working papers which would ordinarily constitute part of a client's books and records, and are not otherwise available to the client.  Mr. Milne's  insistence on an agreement from CCRS to pay him a 'look back fee" or contingent fee relating to the sale of the business before he would turn over documentation relating to the finances of the entities to be sold violated the regulations of both states with respect to the practice of accounting.

On May 19, 2004, plaintiff's counsel was provided with a copy of Mr. Hines' report, a copy of his curriculum vitae, his fee schedule, a list of his publications and a disclosure relating to any testimony provided by Mr. Hines in courts of law.

**11.    Potential Exhibits**

      a.    <u>Plaintiff</u>

            1.    Invoices from Robert J. Milne, CPA, to the defendant, Catuogno Court Reporting Services, Inc., during the time frame of January 31, 2001, to December 31, 2001;

            2.    Business Plans of Sten-Tel, Inc., dated January 1, 1995 and October 12, 1998;

            3.    Catuogno Court Reporting Services, Inc., Accounts Payable Aging Summary as of October 31, 2001;

            4.    Correspondence from Raymond Catuogno dated December 28, 2001;

            5.    1040 US Tax Return for Raymond F. and Denise J. Catuogno for 2000;

6.    Time records for Robert Milne for the calendar year 2001, contemporaneous with work performed;

7.    Correspondence from Raymond F. Catuogno to Robert J. Milne dated November 17, 2001;

8.    Raymond F. Catuogno family trust documents dated July 18, 1997, and February 15, 2001;

9.    Invoices from Robert J. Milne, CPA, to the defendant, Catuogno Court Reporting Services, Inc., during the time frame of January 31, 2000, to December 31, 2000;

10.   Invoices and time records from Robert J. Milne to the defendant Catuogno Court Reporting Services, Inc. for calender years 1998-1999.

11.   Document removing Robert Milne as Trustee from Catuogno Massachusetts Business Trust dated August 31, 2001.

12.   Retainer agreement between plaintiff, Robert Milne, and Patrick Tomasiewicz, counsel for the plaintiff.

13.   Exhibit reflecting costs expended in this matter.

b.   <u>Defendant</u>

1.    A ledger of payments made by CCRS, Sten-Tel and Raymond F. Catuogno to the plaintiff for income tax return preparation for calendar years 1992 through 2001;

2.    1099 income statements from CCRS to the plaintiff for the years 1997 through 2001;

14

3.      1099 income statements from Sten-Tel to the plaintiff for the years 1998 through 2001;

4.      A letter from Raymond F. Catuogno to the plaintiff dated December 28, 2001 regarding payments for services with copies of payment checks;

5.      The plaintiff's time records for professional services;

6.      Plaintiff's invoices to CCRS and Sten-Tel for professional services;

7.      A CCRS expense by vendor detail or summary of payments;

8.      Copies of payment checks from Sten-Tel to the plaintiff;

9.      Copies of payment checks from CCRS to the plaintiff;

10.     A summary of the hours billed by Milne for professional services to CCRS or Sten-Tel together with the financial amounts versus the hours actually spent by the plaintiff in the provision of professional services to both entities;

11.     Raymond F. Catuogno's calendar for the period of February, 2001 to December, 2001;

12.     Amortization sheets prepared by the plaintiff for CCRS in December of 1999;

13.     The federal income tax returns prepared by the plaintiff for CCRS for calendar year 1999-2000;

14.     Federal income tax returns prepared by Kevin Hines, CPA for CCRS during the calendar years 2001, 2002 and 2003;

15

15.    The federal income tax returns of Sten-Tel prepared by the plaintiff for the years 1999 and 2000;

16.    Federal income tax returns prepared by Kevin Hines, CPA for Sten-Tel for the years 2001, 2002 and 2003;

17.    A recapitulation or summary of payments made by CCRS and Sten-Tel to the plaintiff for the period 1997-2001;

18.    Correspondence exchanged between CCRS/Sten-Tel and Milne;

19.    A recapitulation of hours billed by the plaintiff and hours actually worked at Catuogno or at offsite meetings;

20.    A "paperwork production" record composed by Robert Milne;

21.    Correspondence to and from Robert Milne concerning the dispute giving rise to the instant lawsuit.

**12.    Deposition Testimony**

Plaintiff is seeking permission to take the deposition of Christine Cyboron.

**13.    Requests for Jury Instructions**

See attached.

**14.    Anticipated Evidentiary Problems**

Motion in Limine to Preclude Testimony of Expert and Motion for Order to

Compel Deposition to be filed.

**15.    Proposed Findings and Conclusions**

16

None – this case will be heard by a jury.

**16.    Trial Time**

The parties anticipate that trial will require three days.

**17.    Further Proceedings**

<u>Plaintiff's Position</u>

The defendant disclosed an expert witness on May 19, 2004.  Pursuant to the scheduling order agreed upon by the parties on January 23, 2003, any expert witness had to be disclosed by October 15, 2003.  Previous motions for enlargement of time did not in any manner whatsoever alter the time frame in which to disclose an expert witness.  As to the defendant's assertion that the plaintiff has not retained an expert or moved to take the deposition of the defendant's expert, the plaintiff would respond by stating that there is a financial cost involved in retaining an expert and taking a deposition of a defense expert.  One can anticipate that the sum of $5,000.00 would be expended by the plaintiff in this process.  The fact that ten (10) months has elapsed since the disclosure of the expert doesn't change the argument.  Had the disclosure been timely, the plaintiff would have had no choice but to obtain an expert and take a deposition.  Given the untimely disclosure by the defendant, the plaintiff should not have to expend additional monies, unless the court rules otherwise.

17

The defendant asserts that the plaintiff failed to provide a Rule 26 disclosure.  At all times, the defendant had the telephone number and the address of the plaintiff. Computation of damages was provided by the plaintiff to the defendant in accordance with the scheduling order.  As to a copy of documents to be provided by the plaintiff to the defendant, at the deposition of Robert Milne dated January 13, 2004, plaintiff's counsel provided a copy of his file, containing potential exhibits, in accordance with the defendant's request for production, and on the record explained what documents were being provided at that time.  There was a specific colloquy between counsel on the record at the deposition that a Rule 26 disclosure was being made. There was no objection about the manner in which the documents were produced, and no complaint that somehow the documents were disassembled.  It is an exaggeration to state that the plaintiff has not made any form of a Rule 26 disclosure – especially in view of the fact that the plaintiff only intends to call himself as a witness at his trial.  It is true that on March 2, 2005, plaintiff's counsel submitted correspondence to defendant's counsel listing exhibits and identifying Mr. Milne as a witness – but this was not the first effort made to perform a Rule 26 disclosure.

The fact that no interrogatories have been propounded by either party should not bear on the failure of the defendant to comply with the scheduling order.  The defendant

pushes for admissibility of its own expert report, but fails to explain why it never moved for an extension of time to disclose said expert. A seven month delay in disclosing an expert is not appropriate.

In addition, the plaintiff is requesting leave of court to take the deposition of Christine Cyboron. Before the expiration of the discovery time frame, the plaintiff specifically requested that the defendant provide dates to take said deposition and the defendant agreed to do so, but defendant failed to provide dates and now refuses to permit this deposition that the plaintiff anticipates will take two hours to complete. The plaintiff had not noticed the deposition of Ms. Cyboron in reliance upon the defendant's agreement that dates would be provided. In point of fact, the plaintiff's final motion for enlargement of time specifically stated that the additional time was necessary to complete Ms. Cyboron's deposition. The plaintiff was unable to ascertain the defendant's position on the motion for enlargement of time, but counsel for the plaintiff specifically requested a deposition date for Ms. Cyboron that was never provided. Counsel for the plaintiff is reluctant to notice a deposition outside of the discovery period, but is seeking the right to take an additional deposition.

<u>Defendant's Position</u>

## CHRONOLOGY OF DISCOVERY TO DATE

| | |
|---|---|
| 4/12/02 | Complaint filed. |
| 4/23/02 | Complaint served on defendants. |
| 5/17/03 | Motion to dismiss served on plaintiff's attorney. |
| 7/18/02 | Judge Goettel's decision on defendants' motion to dismiss. |
| 12/17/04 | Initial notice of plaintiff's deposition served by mail 11/17/03 with requests for production of documents. |
| 1/13/04 | Re-notice of plaintiff's deposition served by mail with requests for production of documents. |
| 1/13/04 | Taking of plaintiff's deposition and production of documents by the plaintiff in a disorganized fashion. |
| 1/31/04 | Initial discovery deadline established by joint planning meeting and approved by Court on 2/6/03. |
| 3/29/04 | Receipt of notice of taking of deposition of Raymond Catuogno and requests or production of documents. |
| 3/31/04 | First enlargement of discovery deadline on motion of plaintiff's attorney and approved by |

|          |                                                                                                                                          |
|----------|------------------------------------------------------------------------------------------------------------------------------------------|
|          | the Court on January 29, 2004.                                                                                                            |
| 4/16/04  | Deposition of Raymond Catuogno and production of documents.                                                                                |
| 4/16/04  | Service of Catuogno Court Reporting Services, Inc. pretrial disclosure per F.R.C.P. 26.                                                   |
| 4/30/04  | Second enlargement of discovery deadline on motion of plaintiff's attorney and approved by the Court on 3/31/04.                          |
| 5/19/04  | Provision by defendant's counsel to plaintiff's attorney of report of defendant's expert witness with curriculum vitae and fee schedule. |
| 5/21/04  | Third enlargement of discovery deadline on motion by plaintiff's counsel and approved by the Court on 5/5/04.                             |

The purpose for filing of the third motion to enlarge the time for discovery by plaintiff's counsel, as expressed by plaintiff's counsel, was a plan to take the deposition of additional witness, Christine Cyboron. Said deposition was never noticed or taken. The plaintiff has never made any disclosure pursuant to F.R.C.P. 26. The plaintiff did produce some documents in a disorganized fashion, in response to a request for production of documents made by defendants' counsel pursuant to F.R.C.P. 34 and coincident with the taking of the deposition of the plaintiff. No interrogatories have ever been propounded by either party. In accordance with the third enlargement of

21

discovery to May 21, 2004 sought by plaintiff's counsel and allowed by the Court, the defendant, on May 19, 2004, made complete disclosure of its expert witness, Kevin Hines, including a copy of Mr. Hines report, his curriculum vitae and his fee schedule. The plaintiff has never made designation of any expert witness and, for that matter, has never provided any sort of a list of prospective witnesses.

The defendant disclosed an expert witness within the extended period of time for the completion of discovery as obtained by the plaintiff. The extension of discovery allowed by Judge Goettel did not particularize or limit the kind of discovery to be completed. Disclosure was made 10 months ago and plaintiff's counsel has never made any effort to depose the defendant's expert witness. There has been essentially no activity with respect to this litigation during that period of time. At various times plaintiff's counsel mentioned a desire to take the deposition of the defendant's bookkeeper, Christine Cyboron and other employed by the defendant. Defendant's counsel never agreed to those depositions and never received any notices relating to the same. The discovery deadline of May 21, 2004 passed. Plaintiff's counsel made no effort to obtain leave of the court or otherwise notice the taking of the deposition of Christine Cyboron during the past ten months. The disclosure of the expert was done in conformance with the extended discovery deadline, and plaintiff's counsel has made no

22

effort to conduct discovery of the expert witness of whom the plaintiff's attorney has been aware of for at least 10 months. Also, no effort was made by plaintiff's counsel to conduct the deposition of the bookkeeper Christine Cyboron during the discovery period, or various extensions thereof, whose identity was well known to the plaintiff inasmuch as he worked in conjunction with Ms. Cyboron at the defendant's premises on numerous occasions for a period of years. The plaintiff's first and only disclosure of witnesses, documentary exhibits and tangible things, per the requirements of F.R.Civ. P. 26(a)(1), was made by telecopier to defendant's counsel on March 2, 2005 about ten months after the passage of the third extension for completion of discovery.

This dispute has since its commencement involved the quality and quantity of the professional account services allegedly rendered by the plaintiff. In pleadings from the commencement of the action, the defendant has disclosed its contention that the plaintiff violated ethical rules pertaining to the profession of accounting. Obviously that would involve the presentation of expert testimony. It came as no surprise to the plaintiff that the defendant has an expert witness disclosed ten months ago. The plaintiff elected to bring this action alleging damages in excess of $75,000. He is in no position to complain about the expense of litigation, including expert witness fees.

23

**18.     Election for Trial by Magistrate**

The plaintiff does not consent to the case being tried by a United States

Magistrate.                          THE PLAINTIFF,


By: _____
        Patrick Tomasiewicz  ct01320
        Fazzano, Tomasiewicz, Paulding & Barall
        836 Farmington Ave. Suite 109
        West Hartford CT 06119
        Tel: 860-231-7766
        Fax: 860-231-7359


                          THE DEFENDANT,


By:_____
        L. Jeffrey Meehan, Esq.
        Doherty, Wallace, Pillsbury and Murphy
        One Monarch Place
        Springfield, MA  01144
        Tel: 413-733-3111
        Fax: 413-734-3910
        B.B.O. Number 341440

24

## CERTIFICATION OF SERVICE

The undersigned counsel of record for the plaintiff hereby certifies that service of the foregoing document by U.S. mail, postage prepaid, has been made on March 4, 2005, to:

L. Jeffrey Meehan, Esq.
Doherty, Wallace, Pillsbury and Murphy, P.C.
One Monarch Place
1414 Main Street
Springfield, MA  01144

Linda Clifford Hadley, Esq.
Krasow, Garlick & Hadley, LLC
One State Street
Hartford, CT  06103

Kenneth M. Rozich, Esq.
Law Firm of Edward D. Jacobs
PO Box 1952
New Haven, CT  06509

_____
Patrick Tomasiewicz